IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 11 |
| BLACK, DAVIS, and SHUE | * | |
| AGENCY, INC., | * | |
|     Debtor | * | Case No.: 1-06-bk-00051MDF |
| | * | |
| | * | |
| FRONTIER INSURANCE CO., | * | Related to Docket Nos. 575, 585 |
| IN REHABILITATION | * | 588, 594, 602, & 610 |
|     Claimant | * | |
| | * | |
| vs. | * | |
| | * | |
| WESTPORT INSURANCE CORP., | * | |
|     Objectant | * | |

## OPINION

Before me is the Motion of Frontier Insurance Co. in Rehabilitation ("Frontier") to dismiss or stay the objections of Westport Insurance Corp. ("Westport") to Second Amended Proof of Claim #12 and Second Amended Proof of Claim #13. For the reasons set forth below, Frontier's Motion will be denied in part and granted in part.

### I. Factual and Procedural History

In 2000 Black, Davis and Shue Agency, Inc. ("Debtor") and Frontier entered into an agency agreement in connection with the creation of a captive reinsurance program designed to provide worker's compensation insurance for professional employer organizations. Disputes over the implementation of the program led the state insurance superintendent, who had been named the Rehabilitator for Frontier, to file a complaint against Debtor in the United States District Court for the Southern District of New York (the "New York Action") in January 2005. After receiving notice of the New York Action, Westport, which had issued a professional liability insurance policy providing coverage to Debtor, filed a declaratory judgment action in the United

States District Court for the Middle District of Pennsylvania (the "Coverage Action") seeking a determination that Westport was obligated neither to defend Debtor in the New York Action nor to indemnify Debtor if judgment were entered in favor of Frontier. In December 2005, the magistrate judge trying the New York Action granted Frontier's motion for injunctive relief, requiring Debtor to pay nearly $1.5 million into court pending a decision on the merits. Debtor filed for relief under Chapter 11 on January 6, 2006.

Frontier filed proofs of claim #12 and #13 on April 14, 2006. Both claims were later amended. In the meantime, the Honorable Christopher C. Conner issued an order in the Coverage Action holding that Westport had a duty to defend Debtor against the claims asserted in the New York Action, but reserved decision on whether the claims were covered by Westport. Because of the pending bankruptcy case, Debtor moved to stay the proceedings before the District Court. On August 6, 2007, Judge Conner entered an order staying the Coverage Action pending resolution of Frontier's claims against Debtor either in the New York Action or in this Court.

On September 9, 2010, Frontier filed Second Amended Claim #12 in the amount of $4,288,705 and Second Amended Claim #13 in the amount of $4,205,181 (collectively the "Frontier Claims"). Debtor objected to the Frontier Claims and asserted certain affirmative defenses and counterclaims both in the contested matter and in a separate adversary proceeding.[1] Thereafter, Westport filed its objections to the Frontier Claims. On January 18, 2011, Frontier

---

[1] Debtor initially filed counterclaims within its objections to the Frontier Claims in violation of Fed. R. Bankr. P. 3007(b). "A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." Fed. R. Bankr. P. 3007(b). An adversary complaint setting forth the counterclaims to the Frontier Claims was filed by Debtor on February 16, 2011.

2

filed the within Motion requesting the Court to dismiss Westport's objections or, in the alternative, to stay the objections pending a ruling on Debtor's objections to the Frontier Claims.[2]

## II. Discussion

Frontier asserts several legal bases for dismissing or staying Westport's objection to the Frontier Claims.[3] Frontier alleges that Westport's participation in the claims allowance process is collaterally and judicially estopped by the order issued by Judge Conner in the Coverage Action. Frontier further asserts that Westport, as Debtor's liability insurer, is not a party in interest under 11 U.S.C. § 1109(b). More generally, Frontier argues that Westport should not be permitted to participate in the claims allowance process because its interests are adverse to the interest of Debtor and of the bankruptcy estate. Finally, Frontier alleges that Westport's objection to the Frontier Claims should be dismissed because the objections are legally insufficient.

    *A.*    *Westport's Objections are not subject to collateral or judicial estoppel.*

Frontier asserts that principals of collateral estoppel bar Westport from objecting to the Frontier Claims. If collateral estoppel applies, Judge Conner's decision staying the Coverage

---

[2]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (B). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052 made applicable to contested matters by Rule 9014.

[3]The alternative relief requested by Frontier – staying Westport's objections until after Debtor's objections to the Frontier claims are resolved – is inappropriate and will be denied. If Westport lacked standing or its objections were subject to collateral or judicial estoppel, dismissal would be the only appropriate remedy. Neither would imposition of a stay remedy the objections if they were insufficient as a matter of law. The Court can only conclude that Frontier seeks a stay if the Court determines that the conflict of interest that Frontier alleges to exist between Debtor and Westport would be resolved at some future date. For the reasons that are set forth below, however, even if there is a conflict of interest between Debtor and Westport, this conflict does not support a stay of Westport's objections.

Action is the order from which the estoppel would arise. Because Judge Conner's order is a federal decision, this Court must consider federal principals of collateral estoppel. *Wolstein v. Docteroff (In re Docteroff),* 133 F.3d 210, 214 (3d Cir. 1997) (citing *Heiser v. Woodruff,* 327 U.S. 726, 732, (1945)) (federal principles are applied to a federal decision).

      Federal law holds that collateral estoppel is appropriate when: (1) the issue sought to be precluded is the same as the issue that was involved in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final and valid judgment; and (4) the determination of the issue was essential to the prior judgment. *In re Docteroff*, 133 F.3d at 214. The issues presented in the Coverage Action were: (1) Westport's duty to defend Debtor against claims asserted by Frontier; and (2) Westport's duty to indemnify Debtor if Frontier prevails on its claims. Judge Conner ruled that Westport had a duty to defend Debtor and reserved a decision on whether Westport has a duty to indemnify Debtor pending resolution of the Frontier Claims. Although Frontier asserts in the Motion to Dismiss that principals of collateral estoppel apply, it makes no effort to demonstrate how these principals apply to Westport's objections to the Frontier Claims. Indeed, it would be difficult to apply the doctrine of collateral estoppel to the litigation of the Frontier Claims. Simply put, the issue of whether or not Frontier has allowable claims against Debtor has not been tried in any forum. Therefore, Westport's objection is not subject to dismissal on the basis of collateral estoppel.

      For similar reasons, Westport's judicial estoppel argument is without merit. "The doctrine of judicial estoppel prevents a party from asserting inconsistent claims in different legal proceedings" and is invoked in the court's discretion. *American Gen. Fin. Servs, Inc. v. Mintze (In re Mintze)*, 434 F.3d 222, 232 (3d Cir. 2006) (citations omitted). The purpose of the

4

doctrine is to deter parties from "playing fast and loose with the courts." *Scarano v. Cent. R.R. Co. of N.J.,* 203 F.2d 510, 513 (3d Cir.1953).

The Supreme Court has identified three factors to be considered when applying principles of judicial estoppel: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) whether the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Frontier argues that because Westport agreed to a stay of the Coverage Action, thus leaving its liability on potential claims unresolved, it cannot be heard in the claims resolution process. This is not the case. Westport simply agreed that the claims process would proceed to conclusion before the District Court would determine whether Westport had a duty to indemnify Debtor for any claims that were allowed. Failing to find that Westport's current position is inconsistent with its position before the District Court, the Court exercises its discretion and declines to apply judicial estoppel.

Frontier's primary concern about Westport's participation as a separate party in this case is its fear that Westport will pursue discovery designed to support its position in the Coverage Action. While Frontier's fears may be merited, the appropriate point to raise this issue is during discovery or at trial. It would be inappropriate to bar Westport's participation in the claims litigation based upon the possibility that Westport would attempt to introduce irrelevant evidence or request the Court to decide matters outside its jurisdiction. These matters will be addressed at the appropriate time.

5

### B. Westport is a party in interest under 11 U.S.C. § 1109.

Westport has alleged that it is entitled to file objections to the Frontier Claims because it is a party in interest under 11 U.S.C. § 1109(b). Frontier counters that for the purposes of filing objections to its claims, Westport is not a party in interest and, thus, has no standing to file objections to its claims.

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) *quoted in Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm. (In re Congoleum Corp.)*, 321 B.R. 147, 157 (D. N.J. 2005). An action may be dismissed if a party fails to allege a sufficient legal basis for standing. In the absence of standing, a court lacks subject matter jurisdiction. *Pardo v. Pacificare of Texas, Inc. (In re APF Co.)*, 264 B.R. 344, 352 (Bankr. D. Del. 2001). In the within case, the burden of proof is on Westport to demonstrate that it has standing to object to the Frontier Claims. Westport argues that because it has a duty to defend Debtor in the claims litigation with Frontier and may be obligated to indemnify Debtor, it enjoys standing as a party in interest.

Under § 1109(b), "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee may raise and may appear and be heard on any issue in a case under [Chapter 11]." 11 U.S.C. § 1109(b). This section "has been construed to create a broad right of participation in Chapter 11 cases." *In re Global Industrial Technologies, Inc.,* 645 F.3d 201, 210 (3d Cir. 2011) (quoting *In re Combustion Engineering, Inc.,* 391 F.3d 190, 214 n.21 (3d Cir. 2004)).

6

In *Global Industrial Technologies ("GIT")*, the debtor's liability insurer objected to the debtor's Chapter 11 plan, which provided that the court would issue a channeling injunction for personal injury claims arising from the debtor's manufacture of silica. The plan provided that the debtor's insurance policies would be assigned to a trust to fund payments to allowed silica claimants and that the court would issue an injunction directing that all claims for silica-related injuries be made against the trust. The debtor's insurers objected to the creation of the trust because its existence attracted thousands of additional claimants. In response to the insurers' objections, the debtor challenged the insurers' standing to object to the plan. Citing to the holding in *Combustion Engineering,* the debtor asserted that the insurers lacked the power to object to a plan that was "insurance neutral."[4] The provisions at issue in *GIT* provided that the rights of the insurance companies to contest the coverage of claims were preserved. The Third Circuit overruled the decisions of the bankruptcy and districts court, which had determined that the insurers lacked standing. The Court of Appeals acknowledged that the insurers' coverage defenses were not impaired, but concluded that the plan was not "insurance neutral" because the bankruptcy process expanded the number of potential claims against the insurers. The creation of the silica trust and the channeling injunction increased the "quantum of liability" and, thus, was not insurance neutral. *GIT*, 645 F.3d at 212.[5]

---

[4]In *Combustion Engineering*, the Court of Appeals held that certain insurers did not have appellate standing to challenge a plan because the plan neither increased the insurers' pre-petition obligations nor impaired their pre-petition rights under the relevant insurance policies. *Combustion Engineering*, 391 F.3d at 218.

[5]Several bankruptcy courts have held that a debtor's insurer, who may be responsible to pay claims, is a party in interest. *In re Standard Insulations, Inc.*, 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992); *In re Heating Oil Partners*, 2009 WL 5110838, *5 (D. Conn. 2009).

7

In its ruling in favor of the insurers, the United States Court of Appeals for the Third Circuit cited with approval the decision of the United States Court of Appeals for the Seventh Circuit in *In re James Wilson Assocs.,* 965 F.2d, 160, 169 (7th Cir. 1992) in which a "party in interest" is described as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *Id.* The Court of Appeals characterized the *James Wilson* formulation as a "helpful amplification" of the Third Circuit's prior definition of "party in interest" rendered in *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985). In *Amatex*, a "party in interest" is described as one who "has a sufficient stake in the proceeding so as to require representation." *GIT,* 645 F.3d at 210 (quoting *Amatex*, 755 F.2d at 1042). In *GIT*, the Court of Appeals took issue with the District Court's observation that a party in interest under § 1109(b) is "more exacting" than standing under Article III. "Persuasive authority indicates that Article III standing and standing under the Bankruptcy Code are effectively coextensive." *Id.* at 211. To be afforded standing under Article III, a party must have an "injury in fact that is concrete, distinct and palpable, and actual or imminent" and "fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Id.* at 210 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

The within case involves objections to a creditor's claim, not an objection to a debtor's plan. Section 502(a) provides that a proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). There is no reason to define "party in interest" standing more narrowly in the context of an objection to a claim than in the context of a plan objection. Parties in interest for the purpose of claims objections "include not only the debtor, but anyone who has

8

a legally protected interest that could be affected by a bankruptcy proceeding." *Adair v. Sherman*, 230 F.3d 890, 894 n. 3 (7th Cir. 2000) (citations omitted).

Westport has a contractual duty to defend Debtor in the claims litigation and has a potential financial stake in the outcome. Westport's interests, however, are not aligned with those of Debtor. If the Frontier Claims are allowed, the proceeds of the insurance policy issued by Westport would be the primary source for the payment of the Frontier Claims. At this point in the litigation Westport and Debtor have a common interest in defeating the Frontier Claims. If they succeed, both will benefit. However, if the Frontier Claims *are* allowed, the interests of Debtor and Westport diverge. Debtor will seek to have any actions giving rise to the claim characterized as negligent. Westport, however, will seek to portray Debtor's actions as intentional and, thus, outside the policy coverage. If the Frontier Claims are allowed, Frontier will seek to characterize Debtor's actions as negligent rather than intentional to maximize the chance of a recovery. Accordingly, Westport has an interest in the litigation separate from Debtor's interest that could be affected by the outcome and supports separate representation.[6]

C. *Westport may object to the Frontier claims although its interests potentially are adverse to interest of Debtor.*

Frontier asserts that Westport should not be permitted to participate in the claims litigation because it "has a blatant conflict of interest" with Debtor, its insured. As discussed above, it is likely that if the Frontier claims are allowed, Westport's position will be in conflict

---

[6]The uncertainty of Westport's obligation to indemnify Debtor does not impair Westport's standing to object to the Frontier Claims. A potential obligation to pay claims is sufficient to confer standing. *Baron & Budd*, 321 B.R. at 158. *See also, James Wilson Associates*, 965 F.3d at 169 (party in interest status is conferred on one who has "a legally protected interest that *could* be affected by a bankruptcy proceeding." (emphasis added).

9

with Debtor's position. Rather than supporting Westport's exclusion from the claims litigation, the conflict between its interests and the interest of its insured militates in favor of permitting Westport to participate in the litigation on its own behalf. If Westport is excluded from the litigation there will be a lingering concern about whether Debtor's counsel is representing the interest of Debtor or of Westport.[7]

D. *Frontier's Motion under Fed. R. Civ. P. 12(b)(6)*

In addition to its arguments that Westport: (a) lacks standing to file an objection to creditor claims; (b) should not be permitted to object to creditor claims because its interest are adverse to Debtor's interests; and (c) is barred from objecting to Frontier claims by principles of collateral and judicial estoppel, Frontier also argues that Westport's objections to its claims should be dismissed because they fail to state a claim upon which relief can be granted.

Once an objection is filed to a creditor's proof of claim, the proceeding to determine the validity of the claim becomes a contested matter. *In re Gilbreath*, 395 B.R. 356, 364 (Bankr. S.D. Tex. 2008).[8] Hence, for purposes of a motion to dismiss under Fed. R. Bankr. P. 7012, the objection is treated like a complaint in an adversary matter. Rule 12(b)(6) of the Federal Rules of

---

[7]Finding that Westport has independent standing to represent its interests in the claims objection proceedings may clarify the respective interests of Debtor and Westport. "If a conflict of interest arises between an insurer and its insured, the attorney representing the insured must act exclusively on behalf of and in the best interests of the insured." *The Rector, Wardens and Vestryman of St. Peter's Church v. American Nat'l Fire Ins. Co.*, 2002 WL 59333, *10 (E.D. Pa. January 14, 2002) *quoting Builders Square, Inc. v. Saraco*, 1997 WL 3205, *3 (E.D. Pa. Jan. 7, 1997).

[8]Debtor and Westport have objected to Frontier Claims, and Debtor has filed a complaint asserting various counterclaims to the Frontier Claims. Therefore, in compliance with Fed. R. Bankr. P. 3007(b), the objections to the Frontier Claims will be heard in connection with the adversary proceeding docketed at 1:11-ap-00160MDF. Accordingly, Fed. R. Bankr. P. 7012 is applicable to this proceeding.

10

Civil Procedure, made applicable by Fed. R. Bankr. P. 7012(b), provides for dismissal of a complaint that fails to state a claim on which relief can be granted. By its terms, Rule 12(b)(6) requires a court to treat the allegations of the complaint (in this instance, the objection) as true and to construe the allegations in the light most favorable to the non-moving party.[9] *Kehr Packages, Inc.v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d Cir.), *cert. denied*, 111 S.Ct. 2839 (1991). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. ___, ___, 129 S.Ct. 1937, 1948-49 (2009).

### 1. *Lack of sufficient documentation to support the Frontier Claims*

Westport has objected to the Frontier Claims asserting that they are not supported by sufficient documentation. Frontier argues that the sufficiency of the documentation is an issue that the Court may review in the course of litigation, but does not constitute a basis for disallowing the claim without taking evidence. Frontier's position is supported by the majority of courts.

Fed. R. Bankr. P. 3001(c) states that "[w]hen a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim." Rule 3001 places no further burden of document production on a claimant. Section 502(b) of the Bankruptcy Code enumerates an exhaustive list of reasons for sustaining an objection to a proof of claim, and it contains no requirements regarding the production of documentation. 11 U.S.C. § 502(b). Given that

---

[9] A decision on a Rule 12(b)(6) motion must also draw all reasonable inferences that can be drawn from the complaint in favor of the non-moving party, and ask whether, under any reasonable reading of the complaint, the non-moving party may be entitled to relief as a matter of law. *Kehr Packages*, 926 F.2d at 1420.

11

"insufficient documentation" does not support disallowance of a claim under § 502(b), courts have held that an objection made solely on that basis does not support denial of the claim. *In re Moreno*, 341 B.R. 813, 816 (Bankr. S.D. Fl. 2006); *In re Burkett*, 329 B.R. 820 (Bankr. S.D. Ohio 2005); *Dove-Nation v. eCast Settlement Corp.*, 318 B.R. 147, 150 (B.A.P. 8th Cir. 2004). "The vast majority of courts have held that a creditor's mere failure to fully comply with the documentary requirements in Rule 3001(c) does not provide a basis for objecting to, or disallowing, a claim." *In re Moreno*, 341 B.R. at 817 (citations omitted). If a creditor fails to attach sufficient supporting documentation to a proof of claim, the *prima facia* validity of the claim under Rule 3001(f) will be lost. Westport's objection based upon insufficient documentation does not establish a basis for disallowance of the claim at this juncture, but it may provide a basis for finding that the claim is not entitled to *prima facia* validity. It is inappropriate to address this objection at this point in the proceeding. Resolution of this matter is reserved for trial.

2. *Amendments to include interest on claims*

Frontier argues that Westport's objection to the inclusion of prejudgment interest in the amended claims should be dismissed because Westport's objection is not supported by law. Frontier has amended its claims to include interest based on New York law, which provides for prejudgment interest in a breach of contract action from the earliest ascertainable date of the breach until paid at a rate of 9%. Westport characterizes interest as a discrete claim which required the filing of a separate proof of claim, which would have been untimely.

Under New York law, a plaintiff in a contract action is entitled to interest as a matter of law even if its prayer for relief does not demand interest. *See Mallis v. Bankers Trust Co.*, 717

F.2d 683, 694 (2d Cir. 1983) ("New York courts have long held that interest is recoverable as a matter of right in such cases"). Therefore, outside the bankruptcy context, if Frontier prevailed on its claim against Debtor, it would be entitled to interest at 9% on damages awarded. Westport does not dispute Frontier's recitation of New York law, but insists that the amendments to the Frontier Claims are untimely and should be disallowed.

"Amendments to proofs of claim should be freely allowed where the purpose is to cure defects in a claim as originally filed, to describe a claim with greater particularity, or to plead new theories of recovery on facts set forth in the original claim." *In re Ben Franklin Hotel Assocs.,* 186 F.3d 301, 309 (3d Cir. 1999) *quoting In re Ben Franklin Hotel Assocs.*, Bankr. No. 93-17089, slip op. at 11, 1998 WL 94808 (Bankr. E.D. Pa. October 31, 1997). I find that the amendments to the claims filed by Frontier fit within these guidelines. The claims for interest do not state a new theory of recovery, they simply clarify the damages being demanded. Therefore, Frontier's motion to dismiss Westport's objection to the Frontier Claims will be granted to the extent that the amendments to the claims demanding interest under state law are timely and need not be set forth in a separate claim.

### 3. Amendments to include negligence theory of recovery

In its objection to the Frontier Claims, Westport argues that the amendments adding negligence theories of recovery are not allowable when the original claim only alleged an intentional breach of contract. Frontier argues that the negligence claim is based on the same set of facts as the intentional breach of contract claim; therefore, the amended claim does not assert a "new" claim. Further, the allegations of negligence were included in the complaint filed in the New York Action on which the proofs of claim are based.

As noted above, amendments to timely-filed proofs of claim are liberally allowed. Amendments that plead new theories of recovery on the same facts or increase damages are not new claims. *Id. See also In re Hemingway Transport, Inc.*, 954 F.2d 1, 10 (1st Cir. 1992); *In re International Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985). The complaint in the New York Action provided Debtor and Westport with "fair notice" that the conduct forming the basis for the claim was either intentional or negligent. Accordingly, Frontier's motion to dismiss Westport's objection to the Frontier Claims will be granted to the extent that the amendments to the claims may allege a negligence theory of recovery.

In summary, Frontier's motion to dismiss the objections filed by Westport to the Frontier Claims under Rule 12(b)(6) will be granted in part. To the extent that Westport's objections assert that Frontier's amended claims based on a negligence theory of recovery and for interest were not properly included as amendments to the claims, the objections will be dismissed. Dismissal will be without prejudice to Westport's right to pursue its substantive objections related to liability and damages.

### III. Conclusion

For the foregoing reasons, the Court finds that Westport is a party in interest with standing to file objections to the Frontier Claims and is not precluded from objecting to the Frontier Claims because its interests are adverse to Debtor's interests. The Court further finds that Westport is not barred from objecting to the Frontier Claims by principles of collateral and judicial estoppel. The Court also finds that it would be premature to dismiss Westport's objections that the Frontier Claims lack sufficient documentation, and this issue is reserved for trial. However, the Court does find, as a matter of law, that the amendments to the Frontier

14

Claims to include interest under New York law and to plead negligence as an additional theory of recovery were proper and, thus, the amendments were timely. Frontier's Motion to Dismiss Westport's objections to the timeliness of the amendments will be granted.

By the Court,

_Mary D. France_
Chief Bankruptcy Judge

Date: September 29, 2011